UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 17-250(DSD/FLN)

Orbital ATK, Inc. and
Alliant Techsystems Operations LLC,

    Plaintiffs,

v.                            **ORDER**

Heckler & Koch GmbH,

    Defendant.

    Daniel Gilbert Morris, Esq., Erin Brooke Sheppard, Esq., William T. O'Brien, Esq., and Dentons US LLP, 1900 K Street NW, Washington, DC 20006; Michael A. Rosow, Esq., Thomas H. Boyd, Esq., and Winthrop and Weinstine, PA, 225 South 6th Street, Suite 3500, Minneapolis, Minnesota, 55402, counsel for plaintiffs.

    David Jacob Ginsberg, Esq., George David Ruttinger, Esq., and Crowell & Moring LLP, 1001 Pennsylvania Avenue NW, Washington, DC 20004; Mark P. Hodkinson, Esq. and Heley, Duncan & Melander, PLLP, 8500 Normandale Lake Boulevard, Suite 2100, Minneapolis, Minnesota 55437, counsel for defendant.

This matter is before the court upon defendant Heckler & Koch GmbH's motion to dismiss or stay proceedings and to compel arbitration. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion in part.

**BACKGROUND**

This contract dispute arises out of Heckler & Koch's (H&K) alleged failure to deliver twenty XM25 weapons systems and certain

intellectual property to plaintiff Orbital ATK, Inc. (ATK).[1] H&K and ATK entered into a cooperation agreement on October 8, 1994, under which both parties agreed to cooperate in pursuing a contract with the United States Army for the XM25 weapons program. Compl. ¶ 16. Subsequently, ATK entered into several prime contracts with the Army for work on the XM25 weapons systems. <u>Id.</u> ¶ 17. Pursuant to the cooperation agreement, ATK entered into subcontracts with H&K to assist with ATK's obligations under the prime contracts. <u>Id.</u> ¶ 18.

On September 29, 2005, ATK and H&K entered into a teaming agreement for the OICW Weapons System (Teaming Agreement), which superseded the cooperation agreement.[2] <u>Id.</u> ¶ 20; <u>See</u> O'Brien Decl. Ex. A. The parties agreed, among other things, that if the Army would award ATK a prime contract for work on the XM25 weapons program, ATK would award a subcontract to H&K. Compl. ¶ 22.

The Teaming Agreement contains an arbitration provision that states in relevant part: "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, but specifically excluding Subcontract Disputes ... shall be determined by arbitration administered by the International Centre for Dispute

---

[1] ATK is the sole member of plaintiff Alliant Techsystems Inc. Unless otherwise noted, the court will refer to plaintiffs collectively as ATK.

[2] The XM25 program was also known as the Objective Individual Combat Weapon Program (OICW). Compl. ¶ 16.

Resolution in accordance with its International Arbitration Rules." O'Brien Decl. Ex. A § 8.05. The parties further agreed that: "Notwithstanding anything ... to the contrary, any claims, controversies or disputes concerning the performance, validity or enforceability of any Subcontract negotiated under the Agreement shall be resolved in accordance with the applicable disputes provision of such Subcontract." Id. § 8.04. Additionally, the Teaming Agreement provides that the agreement could be terminated by the non-defaulting party if the defaulting party fails to cure, within thirty-days of written notice, a material breach of the Teaming Agreement or a subcontract. Id. Art. 5 h, i. If ATK terminated the Teaming Agreement, H&K was required to grant ATK a non-exclusive license for intellectual property owned by H&K to "enable ATK independently to perform or have performed by others all Subcontract requirements that [H&K] was obligated to perform under the Subcontract." Id. § 7.06a.

On March 24, 2011, the Army awarded a prime contract to ATK to begin the engineering and manufacturing development phase of the XM25 weapons program. Compl. ¶ 25. In anticipation of being awarded a government contract, on February 1, 2011, pursuant to the Teaming Agreement, ATK awarded H&K a subcontract under which H&K agreed to deliver twenty-five final design XM25 weapon systems to ATK Id. ¶¶ 26, 31-32; see O'Brien Decl. Ex. B.

The subcontract incorporated general terms and conditions that

3

provided for resolving disputes through informal and formal mediation but not arbitration. See O'Brien Decl. Ex. B at 8; id. Ex. C § 1.7. The subcontract further provided to ATK a property interest in all technical work product, inventions, and works of authorship developed by H&K in its work under the subcontract and required H&K to deliver, disclose, or assign such property to ATK. Id. Ex. C. § 1.14.

ATK alleges that H&K failed to deliver the XM25 weapons systems in breach of the subcontract. Attempts at informal mediation failed, and, on December 2, 2016, ATK terminated the subcontract due to H&K's alleged default. Compl. ¶¶ 46-50. On December 8, 2016, ATK, pursuant to the terms of the Teaming Agreement, sent a thirty-day cure notice to H&K. Id. ¶ 51. Because H&K allegedly failed to cure the breach within thirty days, ATK terminated the Teaming Agreement on January 26, 2017. Id. ¶¶ 52-53.

On January 26, 2017, ATK filed suit against H&K alleging that H&K breached the subcontract by failing to deliver the XM25 weapon systems and failing to participate in a formal mediation process. Additionally, ATK claims H&K breached the subcontract and Teaming Agreement by failing to transfer intellectual property to ATK. ATK also seeks a declaratory judgment that (1) the Teaming Agreement requires that H&K grant ATK a non-exclusive license in H&K's intellectual property and (2) the subcontract requires that H&K

4

immediately deliver technical work product and inventions related to the XM25 program.  H&K now moves to compel arbitration, arguing that the dispute is subject to the Teaming Agreement's arbitration clause.

**DISCUSSION**

**I. Standard of Review**

In a motion to compel arbitration, the court must determine whether (1) a valid agreement to arbitrate exists between the parties[3] and (2) the specific dispute is within the scope of that agreement.  Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004).  In determining whether a particular dispute is within the scope of the arbitration agreement the court does not examine merits of the underlying claim.  Medcam, Inc. v. MCNC, 414 F.3d 972, 975 (8th Cir. 2005).  "The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration."  Id.  An order to compel arbitration should be granted "'unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute.'"  Id. (quoting Lyster v. Ryan's Family Steak Houses, Inc., 239 F.3d 943, 945 (8th Cir. 2001)).  However, parties cannot be forced to arbitrate a

---

[3] There is no dispute that the Teaming Agreement and subcontract are valid agreements.

5

dispute that the parties have not agreed to submit to arbitration, because "arbitration is a matter of consent, not of coercion." Keymer v. Mgmt. Recruiters Int'l, Inc., 169 F.3d 501, 504 (8th Cir. 1999).

**II. Motion to Compel**

    **A.    Scope of Arbitration Clause**

In deciding whether a dispute is subject to arbitration, the court must first determine whether the clause is broad or narrow. Unison Co. v. Juhl Energy Dev., Inc., 789 F.3d 816, 818 (8th Cir. 2015). If the clause is broad, the presumption in favor of arbitration applies, and the court is required to send the claim to arbitration "as long as the underlying factual allegations simply touch matters covered by the arbitration provision." Id. (internal quotation marks and citation omitted). If the clause is narrow, "the presumption of arbitrability is lessened." Twin City Monorail, Inc. v. Robbins & Myers, Inc., 728 F.2d 1069, 1073 (8th Cir. 1984).

Here, the arbitration clause in the Teaming Agreement covers "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, but specifically excluding Subcontract Disputes." The clause is broad, because the clause covers a wide variety of disputes except for subcontract disputes - a comparatively narrow set of claims. Indeed, the Eighth Circuit has held that the use of the phrase "arising out of or relating to" renders the clause broad. See Fleet Tire Serv. of N. Little Rock

v. Oliver Rubber Co., 118 F.3d 619, 621 (8th Cir. 1997) (holding that the arbitration clause was broad, because it covered claims "arising from" and "relating to" the agreement); see also Unison Co., 789 F.3d at 818 (holding same).[4] The narrow exclusion of subcontract disputes does not change this conclusion because "the exclusion of some areas from possible dispute from the scope of an arbitration clause does not serve to restrict the reach of an otherwise broad clause in the areas in which it was intended to operate." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625 n.13 (1985).

Because the arbitration clause is broad, there is a presumption in favor of arbitration. But this "presumption may be overcome by an express provision excluding a particular grievance from arbitration or by persuasive evidence of a purpose to exclude the claim from arbitration." Local 38N Graphic Commc'ns Conference/IBT v. St. Louis Post-Dispatch, LLC, 638 F.3d 824, 826 (8th Cir. 2011). Such an express exclusion, concerning subcontract disputes, applies here. Therefore, the court must determine whether the disputes at issue are subcontract disputes.[5] If the court cannot conclude with

---

[4] Plaintiffs do not directly dispute that the clause is broad. Instead, they claim that it is irrelevant whether the clause is broad or narrow. But, as explained above, such an analysis is required and legally relevant. See Unison Co., 789 F.3d at 818.

[5] The court rejects H&K's argument that subcontract disputes are still subject to arbitration insofar as they touch upon matters relating to the arbitration clause. Because the Teaming Agreement and subcontract were entered into pursuant to the same business

7

"positive assurance" that the exclusion applies, the court must send the dispute to arbitration. Lyster, 239 F.3d at 945.

## B. The Disputes

In determining whether a dispute is subject to arbitration, the court must "look past the labels the parties attach to their claims to the underlying factual allegations." 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008). Although the complaint only asserts two counts, there are four disputes. Namely, the parties dispute whether H&K: (1) breached the subcontract by failing to deliver twenty weapons systems; (2) breached the subcontract by failing to deliver intellectual property as; (3) breached the subcontract by refusing to participate in a formal mediation; and (4) breached the Teaming Agreement by failing to grant a non-exclusive license to ATK.

The court must examine each of these disputes independently. See KPMG LLP v. Cocchi, 565 U.S. 18, 22 (2011) ("[C]ourts must examine a complaint with care to assess whether any individual claim must be arbitrated."); see also Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010) (emphasis in original) ("[A] court may order arbitration of a particular dispute only where the

---

enterprise, disputes under either agreement will necessarily touch upon the same general subject matter. Where an express exclusion is in the arbitration clause, the question is not merely whether the dispute touches upon the Teaming Agreement; rather, it is whether the exclusion applies. See Local 38N, 638 F.3d at 826.

8

court is satisfied that the parties agreed to arbitrate <u>that dispute</u>."). Further, "when a complaint contains both arbitrable and nonarbitrable claims" a court must compel the arbitration of arbitrable claims, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." <u>Cocchi</u>, 565 U.S. at 22 (internal quotation marks and citation omitted).

### 1. Failure to Deliver Weapons Systems

ATK's claim that H&K failed to timely deliver weapons systems falls squarely under the subcontract. Indeed, it is the only contract that gives rise to H&K's obligation to deliver the weapons systems; the Teaming Agreement imposes no such obligation. Because H&K's obligation to deliver the weapons systems arises under the subcontract, its alleged failure to do so is a subcontract dispute. The court therefore concludes that this claim is expressly excluded from the arbitration clause and, therefore, not subject to arbitration.

H&K argues that even if a dispute is governed by the subcontract, the arbitration clause still applies because the subcontract incorporated the terms of the Teaming Agreement by reference. The court is not persuaded. First, the subcontract generally incorporates "any written Agreements, Representations, and Certifications" only "where applicable." <u>See</u> O'Brien Decl. Ex. B, at 8; <u>id.</u> Ex. C § 1.2. It is far from clear what the parties

intended by the term "where applicable." Furthermore, H&K's interpretation would render meaningless express language that subcontracts are not subject to the Teaming Agreement's dispute resolution process. See O'Brien Ex. A §§ 1.06, 8.04, 8.05.[6] As a result, the court denies H&K's motion to compel arbitration as to this claim.

### 2. Failure to Deliver Intellectual Property Pursuant to Subcontract

ATK seeks both a declaratory judgment and damages for breach of contract based on its claim that H&K failed to deliver intellectual property as required by § 1.14 of the subcontract's general terms and conditions. Section 1.14 of the general terms and conditions obligates H&K to deliver or assign to ATK all technical work product, inventions, and works of authorship developed by H&K in its work under the subcontract. O'Brien Decl. Ex. C. § 1.14. Because H&K's obligation to deliver or assign to ATK arises solely under the subcontract, its alleged failure to do so is a subcontract dispute and therefore not subject to arbitration. Accordingly, the

---

[6] Given the express intention of the parties to exclude subcontract disputes from the arbitration clause, the court likewise rejects H&K's argument that the arbitration provision must control, even over subcontract disputes, in order to "give full effect to all provisions." Johnson Bros. Corp v. Rapidan Redevelopment Ltd. P'ship, 423 N.W.2d 725, 729 (Minn. Ct. App. 1988). The most natural reading of the agreements is that disputes arising and relating to the Teaming Agreement are subject to arbitration, but disputes under the subcontract are not. H&K's construction, requiring that the arbitration clause control over the subcontract's dispute resolution process is unconvincing.

court also denies H&K's motion as to this claim.

### 3. Failure to Participate in Formal Mediation

ATK seeks damages for breach of contract due to H&K's alleged failure to pursue formal mediation under the subcontract. Again, the parties' obligation to pursue formal mediation arises solely under the subcontract; there is no similar provision in the Teaming Agreement. Therefore, this claim arises under the subcontract and is not subject to arbitration. As a result, the court denies H&K's motion as to this claim.

### 4. Failure to Deliver Intellectual Property Pursuant to Teaming Agreement.

ATK also seeks declaratory relief and damages arising under H&K's alleged failure to deliver intellectual property pursuant to the Teaming Agreement. The Teaming Agreement provides that if ATK terminates the Teaming Agreement, H&K is required to grant ATK a non-exclusive license for intellectual property owned by H&K so that ATK can perform H&K's unfulfilled obligations. See O'Brien Decl. Ex. A § 7.06a. No such provision was agreed to in the subcontract. Because the dispute arises from H&K's alleged failure to abide by the terms of the Teaming Agreement, it is subject to the arbitration provision.

ATK responds that the non-exclusive license dispute is excluded from arbitration because the default of a subcontract is a condition precedent to the remedy available under the Teaming Agreement. In other words, argues ATK, this dispute is excluded from arbitration

11

because it arises from and is related to the subcontract dispute. The court is not persuaded.

First, although a default is a condition precedent to the obligation to provide a non-exclusive license, H&K's alleged failure to do so is a breach of the Teaming Agreement - not the subcontract. Indeed, even if ATK proved that H&K defaulted on the subcontract, whether H&K additionally failed to grant a non-exclusive license is a separate factual and legal question, the scope of which involves the interpretation and application of the Teaming Agreement. Second, to the extent that the non-exclusive license dispute relates to the subcontract dispute, it renders the arbitration clause ambiguous. When obligations under the Teaming Agreement, which contains an arbitration clause, are related to obligations under the subcontract, which contains no such clause, the court cannot say with positive assurance that the express exclusion applies. As a result, the court grants H&K's motion as to this claim, and it is dismissed without prejudice.[7]

---

[7] The court declines to stay the nonarbitrable claims because it is convinced that the non-exclusive license claim is unnecessary to the resolution of the remaining subcontract claims.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendant's motion to compel arbitration [ECF No. 27] is granted in part as set forth above.

Dated: September 8, 2017

s/David S. Doty  
David S. Doty, Judge  
United States District Court